# In the United States Court of Federal Claims

BRANDON A. PLATERO and
ADAM BROOKS et al.,

              Plaintiffs,

              v.

THE UNITED STATES,

              Defendant.

Nos. 25-782; 25-1245
Filed March 18, 2026

**OPINION AND ORDER**
**Granting plaintiffs' motion for class certification**
**and denying without prejudice plaintiffs' requests regarding the proposed notice**

After the Supreme Court's decision in *Feliciano v. Department of Transportation*, 605 U.S. 38 (2025), plaintiffs sued the U.S. government to recover reservist differential pay under 5 U.S.C § 5538 and interest under the Back Pay Act, 5 U.S.C § 5596. Plaintiffs move to certify the case as a class action, arguing that they meet all the requirements of this court's rules 23(a) and (b)—numerosity, commonality and predominance, typicality, adequacy, and superiority. The government opposes the motion. Because plaintiffs meet the requirements under this court's rules, they qualify for class certification, and the court will grant plaintiffs' motion for class certification.

The court will deny without prejudice plaintiffs' requests regarding the proposed notice and the timing for issuing it to potential class members.

## I.    Background

Under federal law, civilian federal employees are entitled to a "non-reduction" in pay for the time they serve on active duty in the military reserve or the National Guard. 5 U.S.C § 5538(a). Employees are entitled to that reservist differential pay when they are called or ordered to service

1

"under … a provision of law referred to in [10 U.S.C § 101(a)(13)(B)]" (5 U.S.C § 5538(a)), which includes "any other provision of law during a war or during a national emergency declared by the President or Congress" (10 U.S.C § 101(a)(13)(B)). In April 2025, the Supreme Court held that a federal civilian employee "called to active duty pursuant to 'any other provision of law … during a national emergency' is entitled to differential pay without having to prove that his service was substantively connected in some particular way to some particular emergency." *Feliciano*, 605 U.S. at 55-56.

Plaintiffs in this case state that they are current or former government employees across different federal agencies who have been reserve members of the armed forces or the National Guard and have served in active-duty status during a national emergency sometime from May 6, 2019, forward. ECF No. 30 at 1 [¶2]. Plaintiffs seek to recover reservist differential pay under 5 U.S.C § 5538 and to receive interest on their unpaid wages under 5 U.S.C § 5596. *Id.* Plaintiffs seek to bring this case as a class action under rules 23(a) and (b) of the Rules of the Court of Federal Claims (RCFC) on behalf of themselves and others similarly situated, alleging that there are "hundreds, if not thousands, of members of the Class." *Id.* at 10-11 [¶¶38-39]. They allege that there are questions of law and fact common to the members of the putative class that predominate over any questions that may affect individual class members; the representative plaintiffs are adequate, committed to pursuing this action, and willing and able to represent the proposed class; and a class action is superior to other methods for fair and efficient adjudication and will prevent unduly duplicative litigation. *Id.* at 11-12 [¶¶40-45].

Plaintiffs argue that because they meet all the requirements of RCFC 23(a) and (b)—numerosity, commonality and predominance, typicality, adequacy, and superiority—the court should certify their class and authorize the issuance of a notice to all eligible individuals who meet the

following definition: "All federal employees who, at any time from May 6, 2019, through the present, were not paid the difference between their federal civilian salary and their military pay during their time spent in active duty during a national emergency." ECF No. 35-1 at 6; ECF No. 30 at 10 [¶38]. The government opposes, arguing that plaintiffs have not met the requirements for class certification and that plaintiffs' class definition is overbroad. ECF No. 43.

## II.    Discussion

### A.    Plaintiffs satisfy all class requirements under RCFC 23

Rule 23 sets the standard for class certification in this court. Under rule 23(a), "[o]ne or more members of a class may sue as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." RCFC 23(a). If all rule 23(a) factors are satisfied, rule 23(b) provides that a class action may be maintained if "the United States has acted or refused to act on grounds generally applicable to the class" and if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." RCFC 23(b).

This court has "conveniently restated [rules 23(a) and (b) collectively] as comprising five elements: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy; and (5) superiority." *Curry v. United States*, 81 Fed. Cl. 328, 332 (2008). Plaintiffs bear the burden of showing that "the action is maintainable under" rule 23(b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 14 (1997); *see also Silver Buckle Mines, Inc. v. United States*, 132 Fed. Cl. 77, 95 n.16 (2017) ("[W]ith the notable exception that RCFC 23 allows only opt-in class action …, case law analyzing [rule

3

23 of the Federal Rules of Civil Procedure] may be used to construe RCFC 23"). To determine whether plaintiffs have met their burden, "the Court must conduct a 'rigorous analysis' and thus probe beyond the pleadings." *Oztimurlenk v. United States*, 162 Fed. Cl. 658, 673 (2022) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Once that "rigorous analysis is conducted, the Court has wide discretion in deciding whether the requirements of RCFC 23 have been satisfied." *Oztimurlenk*, 162 Fed. Cl. at 673 (quotation marks omitted).

### 1.    The putative class satisfies the numerosity requirement

RCFC 23(a)(1) states that a class action is appropriate when "the class is so numerous that joinder of all members is impracticable." Because "[i]mpracticable does not mean impossible," a putative class representative need only show that "it is extremely difficult or inconvenient to join all the members of the class." *Jaynes v. United States*, 69 Fed. Cl. 450, 454 (2006) (quotation marks omitted). While the number of potential class members is the most important aspect of the numerosity requirement, *Common Ground Healthcare Cooperative v. United States*, 137 Fed. Cl. 630, 638 (2018), "[t]here is no set number" that is necessarily sufficient or insufficient, *Gross v. United States*, 106 Fed. Cl. 369, 374 (2012). But this court and others have indicated that, with at least forty class members, plaintiffs can generally demonstrate numerosity. *King v. United States*, 84 Fed. Cl. 120, 124 (2008) (citing a Third Circuit case and a treatise).

Even with a putative class of at least forty, "a court must examine the facts of the case to determine whether the numerosity requirement has been satisfied." *Gross*, 106 Fed. Cl. at 374. The court in *King*, 84 Fed. Cl. at 124-25, considered three factors for numerosity: (a) the number of class members; (b) the "geographical location of the potential class members"; and (c) "whether the size of each individual plaintiff's claim hinders the ability of a plaintiff to file any action at all."

        **a.**      **The number of potential class members easily meets the numerosity requirement**

Plaintiffs note that they have named more than thirty putative class members. ECF No. 47 at 7 n.5. Plaintiffs further point to the Office of Personnel Management's website, which states that "thousands of Federal employees also serve in the Reserves or National Guard and are occasionally called to active duty to serve their country in a different capacity." National Guard and Reserve Personnel, U.S. Office of Personnel Management, https://www.opm.gov/fedshirevets/current-veteran-employees/national-guard-and-reserves/ (last accessed March 9, 2026); *see also Feliciano*, 605 U.S. at 41 ("Tens of thousands of federal civilian employees serve the Nation as military reservists."). The government responds that plaintiffs' estimate based on the government website amounts to speculation. ECF No. 43 at 6. A plaintiff "cannot rely on conclusory allegations" or mere "speculation as to the size of the class." *King*, 84 Fed. Cl. at 124 (quoting *Marcial v. Coronet Insurance Co.*, 880 F.2d 954, 957 (7th Cir. 1998)).

In *King*, 84 Fed. Cl. at 124, the court was persuaded by statements in a report from the Government Accountability Office from two years earlier that there were 239 potential class members. The court found the government's own estimate compelling, especially when coupled with 152 already-identified members. *Id.* Here, while there are not as many already-identified class members, if even a fraction of the thousands or tens of thousands of federal employee reservists were called to active duty and choose to join this case, the putative class far outnumbers the putative class in *King*. The "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *DeMons v. United States*, 119 Fed. Cl. 345, 354 (2014) (quoting *Bacon v. Honda of America Manufacturing, Inc.*, 370 F.3d 565, 570 (6th Cir. 2004)).

The government argues that, in relying on the Office of Personnel Management's website, plaintiffs have not approximated how many of those individuals were "ordered to active duty." ECF No. 43 at 6. But plaintiffs were already able to identify and join 32 individuals who were ordered to active duty. Among the thousands of federal employees in the reserves and National Guard, given the six years available, it is reasonable to infer that there are at least a few more who have been called to active duty. *See Common Ground*, 137 Fed. Cl. at 638 (finding sufficient the plaintiff's inference "that hundreds of … insurers are owed cost-sharing reduction payments," "based on the number of insurers offering qualified health plans").

### b.        Putative class members are geographically dispersed

The court is more likely to certify a class when the putative class members "are dispersed geographically." *King*, 84 Fed. Cl. at 124-25. In *King*, the identified plaintiffs were "located in every location where FBI police are regularly stationed, including but not limited to Washington, DC, Virginia, West Virginia, and New York." *Id*. at 125. Here, the identified plaintiffs come from at least four different states. *See, e.g.,* ECF No. 35-2 (Platero, a Florida resident); ECF No. 35-3 (Brooks, a Virginia resident); ECF No. 35-4 (Smalls, a Delaware resident); ECF No. 35-5 (Rosa, a Texas resident). Military reserve units operate in all 50 states. Military Installations, https://installations.militaryonesource.mil/view-all (last accessed March 9, 2026). And potential plaintiffs—both current and former federal employees, and current and former reservists—could live anywhere. As in *King*, 84 Fed. Cl. at 125, that "geographical dispersion" is "sufficiently broad to support the numerosity requirement."

### c.        The individual claims are sufficiently small to support the numerosity requirement

If "the size of each individual plaintiff's claim hinders the ability of a plaintiff to file any action at all," that factor "supports the numerosity requirement." *King*, 84 Fed. Cl. at 125. Here,

plaintiffs assert that "the amounts of the individual class members' recoveries … may only amount to a few hundred to a few thousand dollars." ECF No. 35-1 at 17. The government does not dispute that estimate. ECF No. 43 at 6. It is unlikely that any individual plaintiff would recover enough to justify bringing an individual claim.

\*      \*      \*

Based on all three factors, or even the number of proposed plaintiffs alone, plaintiffs have met their burden in showing that the proposed class satisfies the numerosity requirement.

### 2. The putative class's claims are common and predominate over questions affecting only individual members

To determine commonality and predominance, the court often addresses three factors: (a) whether the factual or legal issues are common among putative class members; (b) whether the common issues predominate over issues affecting individual plaintiffs; and (c) whether the government acted or refused to act on grounds applicable to the proposed class. *Common Ground*, 137 Fed. Cl. at 638.[1]

### a. Factual or legal issues are common among putative class members

To establish that there are common factual or legal issues, plaintiffs must show that the claims of the putative class members "depend upon a common contention" that "is capable of classwide resolution." *Wal-Mart Stores*, 564 U.S. at 350; *see King*, 84 Fed. Cl. at 126 ("[C]ommonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001))).

---

[1] One judge on this court recently noted that other judges' decisions addressing three factors "mistakenly conflate[] the RCFC 23(a)(2) commonality requirement with two separate requirements under RCFC 23(b)," subsections (b)(2) and (b)(3). *Bauer v. United States*, 176 Fed. Cl. 240, 252-53 (2025). Regardless, the court's factors make sense under the overall requirements of rule 23, and changing the location of the analysis would not affect the bottom line here.

A common contention can have a classwide resolution if the "determination of [the contention's] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores*, 564 U.S. at 350. Here, plaintiffs assert that the common issue is whether the putative class members are entitled to differential pay, under 5 U.S.C. § 5538, for the periods during which they were called or ordered to serve on active duty in the military reserves. ECF No. 35-1 at 3.

The government argues that the Supreme Court in *Feliciano* already determined the only common legal question: the interpretation of 5 U.S.C. § 5538. ECF No. 43 at 8. Plaintiffs respond that "the fact that *Feliciano* already resolved the proper interpretation of 5 U.S.C § 5538 does not mean it is not a question of law." ECF No. 47 at 4 (quotation marks omitted). As this court and others have explained, "it does not matter whether the common questions have already been summarily adjudicated" when "deciding whether common questions predominate." *Curry*, 81 Fed. Cl. at 334; *see also Huntsman v. Southwest Airlines Co.*, No. 19-cv-83, 2021 WL 391300, at *4 (N.D. Cal. Feb. 3, 2021) ("That a resolved issue can still impact the predominance analysis implies that it also can be a common issue."). Likewise, when deciding whether there is a common legal question at all, it does not matter that the common question has already been adjudicated.

### b.    Common issues predominate over issues specific to individual class members

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Common Ground*, 137 Fed. Cl. at 639 (citing *Amchem*, 521 U.S. at 623). A court determines whether the common issues are "more prevalent or important" than the individual issues within the class. *Oztimurlenk*, 162 Fed. Cl. at 677 (quoting *Colonial Chevrolet Co. v. United States*, No. 10-647, 2016 WL 11641741, at *3 (Fed. Cl. Apr. 6, 2016)).

The government argues against predominance because (1) different employing agencies pay in different ways, including imposing different procedural requirements; (2) each class member will be entitled to a different calculation of differential pay; and (3) some federal employees who served on active duty might be ineligible for reservist pay for other reasons. ECF No. 43 at 9-11. Plaintiffs respond that "any procedural requirements at individual agencies cannot and do not affect the overarching question" of eligibility for reservist differential pay. ECF No. 47 at 6. Plaintiffs add that different calculations have not prevented this court from certifying classes in other pay cases (*id.* at 7) and that, if any plaintiff turns out to be ineligible for reservist pay, he or she can then be removed from the class (*id.* at 11).

Plaintiffs have the better argument. With respect to agencies imposing separate requirements, as plaintiffs note, the Office of Personnel Management issued a guidance memo on reservist differential pay under 5 U.S.C. § 5538, which indicates that there is a government-wide policy regarding reservist differential pay. ECF No. 35-1 at 12-13.[2] Even if some agencies did not follow the government-wide policy and, for example, actually paid reservist differential pay, that does not warrant a different outcome. Any policy or practice differences among employing agencies can be worked out, removing employees who have already been paid reservist differential pay and otherwise using subclasses if necessary.

As for each plaintiff requiring a different calculation, the government argues that *Kluge v. Department of Homeland Security*, 60 F.4th 1361, 1366 (Fed. Cir. 2023), indicates that individu-

---

[2] The government argues that the Federal Aviation Administration (FAA) has different statutory obligations and need not provide differential pay. ECF No. 43 at 9. But, as plaintiffs point out (ECF No. 47 at 6), the FAA also must pay its employees differential pay. In fact, Mr. Feliciano was an FAA employee (*Feliciano*, 605 U.S. at 41; *see* ECF No. 43 at 9), and he was entitled to his differential pay.

9

alized calculations require denying class certification. But in *Kluge* the Federal Circuit was reviewing the decision of an agency—the Merit Systems Protection Board—applying the deferential standard that the court of appeals applies when reviewing agency decisions. 60 F.4th at 1364-65 (noting the abuse-of-discretion standard of review). There, the board's decision was governed by 5 C.F.R. § 1201.27, which "instructs that the applicable provisions of the Federal Rules of Civil Procedure may guide but not control the administrative judge's decision." *Kluge*, 60 F.4th at 1354-65 (cleaned up). And, in *Kluge*, the plaintiff supported his request for class certification with filings from a parallel case from only one plaintiff, who had already received his requested damages: reservist differential pay. *Id.* at 1365 n.1; ECF No. 35-1 at 13. Each of those factors distinguishes *Kluge* from this case.

The calculation of damages here will require individualized calculations, coordination between individual agencies and military branches, and evaluation of each employee's records. ECF No. 43 at 12-13. It will not be easy. But the government argues that the process is impracticable because it will require the parties to convert military pay to an annual amount, divide by 26, and then divide by 10. ECF No. 43 at 14 (citing *Kluge*, 60 F.4th at 1369). That argument is overblown. Those sorts of calculations can be done with a good spreadsheet. Although the process will not be easy, it is also not impracticable.

This suit "challenges a system-wide practice" that can be resolved class-wide. *Wal-Mart Stores*, 564 U.S. at 350; *see King*, 84 Fed. Cl. at 126; *Amchem*, 521 U.S. at 623; *Common Ground*, 137 Fed. Cl. at 639. As plaintiffs point out (ECF No. 35-1 at 11-12; ECF No. 47 at 7), pay cases often require individual damages determinations, but pay cases are nevertheless amenable to class-action treatment. *Hovarth v. United States*, 149 Fed. Cl. 735, 748 (2020) ("[T]he determination of individual damages … is not too individualized for class-wide determination."); *McCarthy v.*

*Kleindienst*, 741 F.2d 1406, 1415 (D.C. Cir. 1984) (The "mere fact that damage awards will ultimately require individualized fact determinations is insufficient by itself" to defeat a class certification.). This court has certified classes that involve employees of multiple military branches. *Favreau v. United States*, 48 Fed. Cl. 774, 778 (2000) (certifying a class of "[a]ll past, present, and future members of the United States Armed Forces" in a case involving enlistment bonuses). And, like *Curry*, 81 Fed. Cl. at 335, this case does not involve "fact intensive individualized determinations" such as "actual tasks performed and conditions in which they were performed. … Instead, damages can be based on information found on the face of government records."

Finally, as plaintiffs note (ECF No. 47 at 11), employees found to be ineligible for reservist differential pay can be removed from the class. That is preferable to defining the class overly narrowly to cut out any employee who might be ineligible. An "overly narrow class might fail to include a substantial number of persons with claims similar to those of the class members." *Jones v. United States*, 118 Fed. Cl. 728, 733 n.2 (2014).

### c. The government refused to act on grounds applicable to the putative class

Plaintiffs provide declarations from employees of four federal agencies, stating that each was denied reservist differential pay on the same basis. ECF Nos. 35-2 through 35-5. There are more than thirty plaintiffs who have already joined the case, alleging deprivation of reservist differential pay on the same basis. ECF Nos. 14, 16, 28, 29, 41; *see* ECF No. 47 at 3. That suffices to show, preliminarily, that the government has broadly refused to pay the class of plaintiffs reservist differential pay.

### 3. The representative plaintiffs' claims are typical of the claims of the class.

Claims are considered typical of the claims of the class when "each class member's claim arises from the same course of events" and "each class member makes similar legal arguments to

prove the defendant's liability." *Common Ground*, 137 Fed. Cl. at 641 (quotation marks omitted). That typicality requirement can be "satisfied even if some factual differences exist between the claims of the named representatives and the claims of the class." *Id*. (quotation marks omitted). Generally, courts look to see if, even with the factual differences, shared "essential characteristics" remain. *Id.* The courts ask "whether all class members are challenging the same conduct and relying on the same legal theories." *Y & J Properties, Ltd. v. United States*, 134 Fed. Cl. 465, 468 (2017). "[T]he commonality and typicality requirements of Rule 23(a) tend to merge," *Wal-Mart Stores*, 564 U.S. at 349 n.5, so "satisfying commonality will likely dispose of the typicality requirement," *Oztimurlenk*, 162 Fed. Cl. at 679.

The claims of the representative plaintiffs and the potential class members are the same and arise out of the same government inaction. Plaintiffs satisfy the typicality requirement.

### 4.    The court already determined that putative class counsel is adequate

In September 2025, the court granted plaintiffs' motion to designate three law firms—Outten & Golden LLP, Burakiewicz & DePriest PLLC, and McGillivary Steele Elkin LLP—as interim class counsel. ECF No. 33. The court considered the same four factors under RCFC 23(g)(1) that govern the appointment of class counsel. *Id.* at 2. The court determined that plaintiffs' counsel "are well positioned to fairly and adequately represent the putative class … [and] have also established that they satisfy each of the four factors." *Id.* Plaintiffs satisfy the adequacy requirement.

### 5.    A class action is the best way to fairly and efficiently adjudicate this controversy

To maintain a class action, "class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem*, 521 U.S. at 615 (cleaned up). A class action should "achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about

other undesirable results." *Id.* (cleaned up, citing advisory committee's note to the 1966 amendment of rule 23 of the Federal Rules of Civil Procedure). To determine superiority, the court considers "(1) the potential class members' interests in individually controlling the prosecution of separate actions, (2) the extent and nature of any litigation concerning the controversy already begun by class members, and (3) the likely difficulties in managing a class action." *Common Ground*, 137 Fed. Cl. at 642 (cleaned up); *see* RCFC 23(b)(3).

Here, for each putative class member, the government allegedly failed to pay his or her reservist differential pay as required under 5 U.S.C. § 5538. *See Feliciano*, 605 U.S. at 54-56. As plaintiffs point out (ECF No. 47 at 8 & n.7), at least for the military branches,[3] there is one agency—the Defense Finance and Accounting Service (DFAS)—that provides military pay, and DFAS therefore has the military payroll records of most class members. DFAS also can help with the process of providing contact information for putative class members.

The recovery for each individual class member, according to plaintiffs, likely will total between a few hundred and a few thousand dollars. ECF No. 35-1 at 17. Each class member is unlikely to be interested in individually controlling prosecution of a separate individual action, as the cost of independent litigation likely exceeds his or her potential recovery. *See, e.g.*, *Barnes v. United States*, 68 Fed. Cl. 492, 499-500 (2005) (determining that "the small recoveries expected to be received … render it less likely that, without the benefit of class representation, they would be willing to incur the financial costs and hardships of separate litigations").[4]

---

[3] Plaintiffs do not address the National Guard.

[4] The government may be pursuing a theory that each plaintiff needed to meet agency-level requirements before filing suit or before being entitled to differential pay. ECF No. 43 at 2, 6, 17; *see* ECF No. 46 at 3. Plaintiffs indicate that they are pursuing a tolling theory, which appears to be similar to a theory that class members' claims can relate back to the date of the first complaint. ECF No. 35-1 at 20-21. The court need not decide either of those issues now.

The parties note one pending case raising similar issues, *Schwieger v. United States*, No. 21-2131, ECF No. 100 (Fed. Cl. June 18, 2024). But, while this case has moved forward with more than thirty plaintiffs and confirmed interim class counsel, that case has gathered only its one plaintiff. So that case does not affect the class determination here. The government also notes that one plaintiff in this case, Sheymarie Rosa, was paid during the pendency of the lawsuit, arguing that class members have therefore received "individual treatment." ECF No. 43 at 17 n.2; *see* ECF No. 47 at 10 n.9. But that one payment does not show individualized treatment; at most, it means that Ms. Rosa falls outside the class definition. Further, as plaintiffs note, the government generally should not be paying representative plaintiffs during ongoing litigation. *See Abbey v. United States*, No. 07-272, ECF No. 96 (Fed. Cl. July 2, 2009).

### B.    Plaintiffs' class definition is appropriate

Plaintiffs' proposed class includes "[a]ll federal employees who, at any time from May 6, 2019, through the present, were not paid the difference between their federal civilian salary and their military pay during their time spent in active duty." ECF No. 30 at 10 [¶38]. In its response to the motion to certify a class, the government raises two concerns about plaintiffs' class definition. ECF No. 43 at 18.

First, the government argues that the definition would overburden the government in requiring it to "identify all employees at dozens of agencies who 'were not paid the difference between their federal civilian salary and their military pay.'" ECF No. 43 at 18. Plaintiffs argue that the government only has to collect a lot of data. ECF No. 47 at 10. The court agrees with plaintiffs; although data collection will not be easy, it is feasible, and a difficult task for the government does not mean plaintiffs have presented an unreasonable class definition.

Second, the government argues that plaintiffs' "sweeping" definition (ECF No. 43 at 17) would "encompass ineligible differential pay claims" (*id.* at 9). The government points to Ms.

14

Rosa's claim as an ineligible claim. But, in addition to the concerns already addressed with respect to Ms. Rosa (part II.A.5), as plaintiffs note, class actions in this court are opt-in. Thus, "if an employee who receives notice of this lawsuit does not believe that they are eligible for reservist differential pay because, for example, they already received such pay or used paid leave" for the relevant period, "they simply do not have to sign up or opt into the case." ECF No. 47 at 11 n.10; *see also* King, 84 Fed. Cl. at 122 n.2 (citing rules committee notes to RCFC 23 (2002) (explaining that RCFC 23 "is modeled after Rule 23 of the Federal Rules of Civil Procedure" but "differs from the federal rule" in that "it allows only 'opt-in,' but not 'opt-out, class actions'")); *Oztimurlenk*, 162 Fed. Cl. at 669 ("RCFC 23 provides for opt-in class actions only."). Thus, even to the extent that plaintiffs' definition might be overbroad, an overbroad definition is preferable to an overly narrow one. *Jones*, 118 Fed. Cl. at 733 n.2. And, as plaintiffs note, the court can modify the class definition if needed as litigation proceeds. *Gross*, 106 Fed. Cl. at 374 (collecting cases).

The court therefore agrees with plaintiffs' class definition.

### C.    The court will work with the parties to finalize the notice to class members

The court will not yet address plaintiffs' proposed notice. Instead, the court will schedule a status conference to discuss the content, format, communication method, timing, and other aspects of the notice with the parties. The court will therefore deny without prejudice plaintiffs' requests regarding the proposed notice.

### III.    Conclusion

For the reasons stated above, this court **grants** plaintiffs' motion to certify a class. The court **confirms** interim class counsel at Outten & Golden LLP, Burakiewicz & DePriest PLLC, and McGillivary Steele Elkin LLP as class counsel. The court **defines** the class as plaintiffs propose: All federal employees who, at any time from May 6, 2019, through the present, were not

paid the difference between their federal civilian salary and their military pay during their time spent in active duty. The court **denies without prejudice** plaintiffs' requests regarding the proposed notice. The court will reach out to the parties to schedule a status conference regarding next steps, addressing the notice and a schedule.

      **IT IS SO ORDERED.**

<u>/s/ Molly R. Silfen</u>
MOLLY R. SILFEN
Judge

16