# In the United States Court of Federal Claims

| | |
|---|---|
| BRANDON A. PLATERO and<br>ADAM BROOKS et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Nos. 25-782; 25-1245<br>Filed July 22, 2026 |

**OPINION AND ORDER**
**Denying plaintiffs' motion to redefine the class**

On May 6, 2025, Brandon Platero filed a complaint to recover reservist differential pay under 5 U.S.C. § 5538, under the Supreme Court's decision in *Feliciano v. Department of Transportation*, 605 U.S. 38 (2025). The court has described the nature of the case in other decisions and will not repeat the description here except where relevant to this decision.

Mr. Platero's complaint included allegations that he represented a large potential class of service members. After a consolidation with another case and amendment to include other named plaintiffs, the court certified a class including "[a]ll federal employees who, at any time from May 6, 2019, through the present, were not paid the difference between their federal civilian salary and their military pay during their time spent in active duty." *Platero v. United States*, 180 Fed. Cl. 425, 436 (2026). Plaintiffs now move to redefine the class to include "all federal employees, who, at any time since March 11, 2009—when the reservist pay statute, 5 U.S.C. § 5538, was enacted—were not paid the difference between their federal civilian salary and their military pay during their time spent in active duty." ECF No. 51 at 1 (emphasis omitted). Plaintiffs argue that, under the

court's accrual suspension rule, plaintiffs' claims did not accrue until the Supreme Court issued its decision in *Feliciano*. Because the accrual suspension rule does not apply in this circumstance, the court will deny plaintiffs' motion to redefine the class.

## I. Discussion

This court's jurisdiction is primarily defined by the Tucker Act, which provides the court with exclusive jurisdiction to decide specific types of monetary claims against the United States. *Kanemoto v. Reno*, 41 F.3d 641, 644 (Fed. Cir. 1994); 28 U.S.C. § 1491(a)(1). The Military Pay Act, 37 U.S.C. § 204, "confers on an officer the right to the pay of the rank he was appointed to up until he is properly separated from the service." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997). The Military Pay Act thus "provides for suit in [the Court of Federal Claims] when the military, in violation of the Constitution, a statute, or a regulation, has denied military pay." *Antonellis v. United States*, 723 F.3d 1328, 1331 (Fed. Cir. 2013) (quotation marks omitted).

A statute of limitations restricts this court's jurisdiction. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134 (2008) (maintaining the Supreme Court's longstanding interpretation that this court's statute of limitations is "jurisdictional"). "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. A claim accrues "when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." *San Carlos Apache Tribe v. United States*, 639 F.3d 1346, 1350 (Fed. Cir. 2011) (quotation marks omitted). Because section 2501's statute of limitations is jurisdictional, the Supreme Court has held that equitable tolling under the statute is also barred. *John R. Sand & Gravel*, 552 U.S. at 136; *see also Kelly v. United States*, No. 24-2041, 2026 WL 2066092, at *5 (Fed. Cir. July 17, 2026) (holding that, because *John R. Sand & Gravel* addressed

section 2501, courts "are bound to follow its direction that § 2501 is jurisdictional and not subject to equitable tolling").

**A. Differential pay claims accrue no later than the end of an activation, so absent an exception, plaintiffs' differential pay claims for activations that ended before May 6, 2019, are barred**

For military pay claims, "the limitations period is established by the date of accrual, which is the date on which the service member was denied the pay to which he claims entitlement." *Martinez v. United States*, 333 F.3d 1295, 1314 (2003) (en banc). Mr. Platero filed suit on May 6, 2025. Because the statute of limitations is six years, the current, certified class consists of plaintiffs who "any time from May 6, 2019, through the present, were not paid the difference between their federal civilian salary and their military pay during their time spent in active duty." *Platero*, 180 Fed. Cl. at 436; *see also* ECF No. 30 at 13 [¶¶49-51]. Claims that accrued before May 6, 2019, are time barred, absent an exception.

One exception that plaintiffs appear to request (ECF No. 56 at 2 n.2), and the government appears not to oppose (ECF No. 53 at 10 n.3), is the statutory tolling available under the Service-members Civil Relief Act (SCRA), 50 U.S.C. § 3936. Plaintiffs appear to be entitled to that tolling, so, depending on a service member's recent length of military service, that individual member's start date may be earlier than May 6, 2019. But, although a plaintiff's claim may extend earlier than May 6, 2019, in determining who should receive a class notice, the parties need not look earlier than May 6, 2019. Barring any accrual suspension (discussed below), any plaintiff who has a timely claim will have at least some portion of that claim extending into the period after May 6, 2019. In other words, a potential class member whose last period of active duty ended before May 6, 2019, will not have a timely claim, even accounting for SCRA tolling.

At this point, outside the SCRA, plaintiffs seek only accrual suspension and not tolling of the statute of limitations. *See* ECF No. 56 at 18, 19 n.18. The parties may in the future address

some form of tolling or relation back to the original complaint for class members who join the suit. *Id.* at 18-19; ECF No. 35-1 at 20-21; *see generally Blue Cross and Blue Shield of Kansas City Welfare v. United States*, No. 24-2317, 2026 WL 2070084, at *5 (Fed. Cir. July 17, 2026) (non-precedential) (stating that the bar against tolling "is not dependent on intervening in or joining an existing suit," but addressing a situation in which the plaintiff had filed a separate suit after being dismissed from the class action (quotation marks omitted)). The court need not decide that issue now.

**B. The accrual suspension rule does not apply in this case**

Plaintiffs ask the court to apply the accrual suspension rule, so all class members can "reach back to 2009 for their claims for backpay." ECF No. 51 at 2. Plaintiffs argue that "their claims did not begin to accrue until the issuance of [the Supreme Court's decision in] *Feliciano*." *Id.*

The accrual suspension rule is "distinct from the question whether equitable tolling is available under" 28 U.S.C. § 2501. *Martinez*, 333 F.3d at 1319. To my knowledge, the rule appears only in decisions of this court and the Federal Circuit (or their predecessors).[1] And the court of appeals most often denies application of the rule. *See Young v. United States*, 529 F.3d 1380, 1385 (Fed. Cir. 2008); *Martinez*, 333 F.3d at 1319; *but see Holmes v. United States*, 657 F.3d 1303, 1322 (Fed. Cir. 2011) (requiring the Court of Federal Claims to apply the accrual suspension rule in the plaintiff's favor in determining when he reasonably should have known of the alleged breach of contract). That is because the rule must be "strictly and narrowly applied." *Weckler v. United States*, 752 F.2d 1577, 1580 (Fed. Cir. 1985).

[1] While a unique doctrine for a limitations period applicable only to this court is odd, so is the jurisdictional nature of this court's statute of limitations under *John R. Sand & Gravel*. *See United States v. Wong*, 575 U.S. 402, 410 (2015) (explaining that "most time bars are nonjurisdictional"); *Harrow v. Department of Defense*, 601 U.S. 480, 484 (2024).

According to the en banc Federal Circuit, "the accrual of a claim against the United States is suspended, for purposes of 28 U.S.C. § 2501, until the claimant knew or should have known that the claim existed." *Martinez*, 333 F.3d at 1319; *see Japanese War Notes Claimants Association of Philippines, Inc. v. United States*, 373 F.2d 356, 358-59 (Ct. Cl. 1967). Thus, a plaintiff "must either show that [the] defendant has concealed its acts with the result that [the] plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date." *Japanese War Notes*, 373 F.2d at 359 (quoting *Urie v. Thompson*, 337 U.S. 163, 169 (1949)). Plaintiffs here do not assert that the government concealed its failure to pay them the difference between their federal civilian salary and their military pay during their time spent on active duty. They concede that they knew of their pay at least by the time they received the last deficient paycheck for a period of active duty.

Plaintiffs instead argue that their injuries were inherently unknowable because binding precedent from at least 2021 to 2025 precluded them from bringing or maintaining a suit. In *Adams v. Department of Homeland Security*, 3 F.4th 1375, 1380 (Fed. Cir. 2021), the Federal Circuit held that a reservist's service needed to be connected to the declared emergency to entitle that reservist to differential pay. That decision was binding on this court and the Federal Circuit until the Supreme Court's 2025 reversal in *Feliciano*. Plaintiffs further argue that even before *Adams*, the Federal Circuit had intimated in 2018, albeit primarily in the context of a different statute, that reservists "must demonstrate that their call to active duty was in support of a contingency operation." *O'Farrell v. Department of Defense*, 882 F.3d 1080, 1086 n.5 (Fed. Cir. 2018) (quotation marks omitted). And, they argue, even before that, the government, including the Office of Per-

sonnel Management, consistently took the position that the relief plaintiffs now seek was unavailable, or at least the government failed to provide clear guidance. ECF No. 51 at 5-6; ECF No. 56 at 7-9.

Plaintiffs thus argue that although the facts of their case were knowable at all times, the law was unknowable because *Adams* was binding. They argue that theirs is the rare situation "in which [a] change in circumstances arises out of a decision that overrules or alters prior precedent, with the claim deemed to have been tolled until the modifying decision was made." ECF No. 56 at 3 (quoting *Petro-Hunt, LLC v. United States*, 90 Fed. Cl. 51, 62 (2009), *aff'd*, 862 F.3d 1370 (Fed. Cir. 2017)). According to plaintiffs, their claim was "inherently unknowable" because they "had no right to bring suit until adverse precedent … was reversed by the Supreme Court." ECF No. 56 at 3 (quoting *Ram Energy, Inc. v. United States*, 94 Fed. Cl. 406, 412 (2010)); *see also* ECF No. 51 at 3 (arguing that before the Supreme Court's decision in *Feliciano*, the "legal landscape concerning the reservist differential pay statute was such that a prior decision 'effectively barred' Plaintiffs and class members from bringing viable claims" (quoting *Boyajian v. United States*, 129 Fed. Cl. 336, 340 (2016))).

As an initial matter, plaintiffs cite no binding authority indicating that the accrual suspension rule applies to changes in law, as opposed to unknowable facts. Although this court applied the rule to changes in law in *Petro-Hunt*, 90 Fed. Cl. at 62-63; *Ciapessoni v. United States*, 129 Fed. Cl. 332, 335 (2016); and *Boyajian*, 129 Fed. Cl. at 340,[2] courts generally do not suspend accrual of statutes of limitations for changes in law. *See Catawba Indian Tribe of South Carolina v. United States*, 982 F.2d 1564, 1572 (Fed. Cir. 1993) (declining to apply the accrual suspension

[2] Plaintiffs cite *Ram Energy*, 94 Fed. Cl. at 412, for the same proposition, but in that case the court held that the change in law was not "inherently unknowable."

rule where "all the relevant *facts* were known. It was the meaning of the law that was misunderstood." (emphasis in original)); *cf. Boling v. United States*, 220 F.3d 1365, 1374 (Fed. Cir. 2000) (addressing equitable tolling—not accrual suspension—and holding that, even though there was an earlier binding decision that "effectively barred the cause of action," "the plaintiffs point[ed] to no authority which would suggest that the presence of adverse precedent automatically leads to equitable tolling," and the plaintiffs could not toll the statute of limitations); *but see Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 257-58 & nn.3-4 (2016) (denying equitable tolling to the Menominee Tribe but declining to decide whether equitable tolling—not accrual suspension—could apply based on a party's "relying on *actually binding* precedent that is subsequently reversed").[3]

In fact, applying the accrual suspension rule to changes in law can lead to unreasonable results. Plaintiffs agreed at the oral argument that, even if the differential-pay statute at issue were much older, say, dating back to the 1970s instead of 2009, the accrual suspension rule would still allow damages for periods of service dating back that far. But this court's statute of limitations is designed "to achieve a broader system-related goal, such as facilitating the administration of claims, limiting the scope of a governmental waiver of sovereign immunity, or promoting judicial efficiency." *John R. Sand & Gravel*, 552 U.S. at 133 (citations omitted); *see Hart v. United States*, 910 F.2d 815, 818 (Fed. Cir. 1990) (categorizing section 2501 "as a statute of repose"). Applying

[3] *Boling* and *Menominee Indian Tribe* both concerned equitable tolling rather than accrual suspension. The standard for equitable tolling—which requires that a plaintiff show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing," *Menominee Indian Tribe*, 577 U.S. at 255—appears to be more forgiving than the standard for accrual suspension, which must be "strictly and narrowly applied," *Martinez*, 333 F.3d at 1319.

it to changes in law and thus allowing it to reach so far back in time could undermine those purposes.

But even assuming accrual suspension can apply to a situation in which a plaintiff had no right to bring suit under adverse precedent, such as *Boyajian*, 129 Fed. Cl. at 340, this is not such a case. Service members were bringing the same differential pay claims before the Supreme Court's decision in *Feliciano*. And before the 2021 *Adams* decision, some service members even succeeded in convincing administrative bodies that the service members had the correct interpretation of the statute. *See Marchand v. Government Accountability Office*, 12-GA-05 VT, 2012 WL 8020671, at *3 (C.A.O.C. Dec. 27, 2012) (Congressional Accountability Office of Compliance explaining that reservists were entitled to differential pay under section 5538(a) and concluding that "Congress's intent is clear" that it meant to extend benefits to reservists ordered to active duty under "any other provision of law" during a national emergency); *Marquiz v. Department of Defense*, No. SF-4324-15-0099-I-1, 2015 MSPB LEXIS 2138, at *6-7 (M.S.P.B. Mar. 12, 2015), *aff'd*, 123 M.S.P.R 479 (2016) (nonprecedential) (ordering agency to pay a petitioner who was called or ordered to active duty and served during a national emergency declared by the president); *Miller v. Department of Treasury*, No. CH-3330-16-0518-I-1, 2016 MSPB LEXIS 6318, at *7 (M.S.P.B. Oct. 24, 2016) (same); *Doe v. Department of State*, No. NY-4324-15-0127-1-2, 2016 MSPB LEXIS 5987 (M.S.P.B. Oct. 6, 2016) (holding that the petitioner was entitled to differential pay when he was "ordered to active duty … during a declared national emergency").

A claim is "not inherently unknowable" if "other [plaintiffs] brought suit" before the later change in law. *Ram Energy*, 94 Fed. Cl. at 412; *see Jordan v. United States*, 179 Fed. Cl. 558, 587-88 (2025) ("Plaintiffs do not articulate why it was possible for Mr. Lambro to know of his rights and file suit yet impossible for Plaintiffs here to know of their own rights, or, similarly, for the

plaintiffs in other cases in this Court that are completely unrelated to this litigation to raise similar claims."); *Communications Vending Corp. of Arizona v. Federal Communications Commission*, 365 F.3d 1064, 1075 (D.C. Cir. 2004) (explaining that a litigant "cannot toll or suspend the running of the statute [of limitations] by relying upon the uncertainties of controlling law. It is incumbent upon him to test his right and remedy in the available forums." (quoting *Fiesel v. Board of Education*, 675 F.2d 522, 524-25 (2d Cir. 1982))); *see also Entines v. United States*, 39 Fed. Cl. 673, 681 (1997), *aff'd*, 185 F.3d 881 (Fed. Cir. 1999) (reasoning that because other similarly situated litigants brought the same claims "in the 1970s and 1980s," plaintiffs' allegations that their claims were "inherently unknowable" were "fatally undermine[d]"). Here, Mr. Feliciano and other service members brought or maintained their suits, both before and after the Federal Circuit's decision in *Adams*. The service members' claims were not inherently unknowable.

Although some parties successfully received the differential pay plaintiffs here seek (*see, e.g.*, *Doe*, 2016 MSPB LEXIS 5987), plaintiffs rely on the fact that the government consistently took the same position, both in litigation and under guidance from the Office of Personnel Management, until the Supreme Court reversed *Adams* in *Feliciano*. ECF No. 56 at 8; ECF No. 51 at 5. But a consistent position by the government, absent binding authority to the contrary, should be the norm; it does not warrant the strict and narrow application of the accrual suspension rule.

## II. Conclusion

For the reasons stated above, this court **denies** plaintiffs' motion to redefine the class, with the exception that plaintiffs appear to be entitled to SCRA tolling.

**IT IS SO ORDERED.**

/s/ Molly R. Silfen
MOLLY R. SILFEN
Judge